DIXON, Chief Justice.
This case began as a suit by thirteen state employees to enjoin various state officials from implementing a directive increasing the number of days in pay periods of classified employees in the civil service system. On February 4, 1988, interim Commissioner of Administration Brian E. Kendrick directed all state agencies with employees under the Uniform Payroll System to delay employee paydays and remittance of the state’s share of retirement contributions by one additional day for each pay period, beginning with the March 29, 1988 period and ending with the July 15, 1988 period. The state took this action to avoid an immediate cash flow crisis brought on in part by the worldwide collapse in the price of oil and the resulting inability of the state to borrow needed funds.[1] The plaintiffs *957 initially sought a temporary restraining order, preliminary and permanent injunctions, and a declaratory judgment, charging that Kendrick’s directive constituted an unconstitutional intrusion by the state’s executive branch into the authority[2] of the Civil Service Commission to establish a Uniform Pay Plan[3] for state employees. The trial court declined to issue a temporary restraining order but overruled defendants’ exceptions of lack of jurisdiction, improper use of summary process, and no cause of action. On plaintiffs’ motion, the court dismissed with prejudice the claims against Joseph Burris, State Auditor, and the Louisiana Retirement System.
Trial on the preliminary injunction was held on March 22, 1988. The judge concluded that the issue was properly before the district court, finding that exclusive jurisdiction did not lie with the state Civil Service Commission because the Commission had not adopted any rule concerning the disbursement of paychecks. The court then determined that the delay in the distribution of paychecks for state classified workers was not a violation of the Commission’s Uniform Pay Plan. Since the plaintiffs had failed to make the required prima facie showing of a likelihood of success on their claim for a permanent injunction, the court dismissed the plaintiffs’ request for a preliminary injunction.
The plaintiffs filed an application for supervisory writs. The defendants also applied for writs challenging the district court’s overruling of the exceptions of lack of jurisdiction, improper use of summary process, and no cause of action. In a decision rendered on May 17,1988, the court of appeal reversed the district court’s decision overruling the defendants’ exception of lack of subject matter jurisdiction and held that the Civil Service Commission has exclusive jurisdiction under Article X, § 10(A) of the Louisiana Constitution to hear complaints related to delays in distribution of paychecks. Strickland v. Office of the Governor, 525 So.2d 740 (La.App. 1st Cir.1988). This court granted writs to determine whether Article X, § 10 of the Louisiana Constitution grants to the Commission exclusive jurisdiction over this matter or whether, as plaintiffs contend, the Commission is powerless to hear challenges involving the constitutional limits of its authority.
ACTUAL OR JUSTICIABLE CONTROVERSY
It is necessary to address at the outset the state’s contention that the issue presented by this case is moot, since the payroll checks deferred as a result of implementation of the Kendrick directive were issued to all affected state employees by July 29, 1988. Appeals from an order denying injunctive relief should be dismissed as moot when the act sought to be enjoined has already occurred. Sobolewski v. Brown, 405 So.2d 1254, 1255 (La.App. 4th Cir.1981). A case is moot if the rendition of a judgment therein will serve no useful purpose and afford no practical relief. Robin v. Concerned Citizens for Bet *958 ter Education in St. Bernard, Inc., 384 So.2d 405, 406 (La.1980).
When the Kendrick directive was issued on February 4, 1988, there was no Commission rule governing the time for disbursement of employee paychecks. On April 6, 1988 the Commission enacted Civil Service Rule 15.2.1,[4] requiring the establishment of payroll periods for classified employees and establishing procedures for requesting deviations from these periods. Pursuant to this rule, various state agencies requested and received authority from the Director of Civil Service, effective April 14, 1988, to continue delaying classified employee paychecks until October 1, 1988. Thus, the Kendrick memo governed the issuance of classified employee paychecks only from February 4, 1988 until April 14, 1988. After that date, challenges to the implementation of the directive became moot.
Consequently, discussion of subject matter jurisdiction over disputes concerning payroll distribution for classified employees in the absence of a specific Commission rule would constitute an advisory opinion and would violate the well established judicial policy of this state. Verdun v. Scallon Bros. Contractors, 263 La. 1073, 270 So.2d 512, 513 (1972). Since there is now a Commission rule and since all delayed paychecks have been issued, the need for relief has ceased to be a justiciable issue.
Accordingly, the appeal is dismissed as moot.

. Kendrick’s directive reads in pertinent part: "As you are aware, the state is facing both an immediate cash and overall financial crisis. Quite simply, this state does not have the financial resources necessary to cover all authorized operating expenditures through the remainder of the fiscal year, and our ability to borrow, through the financial markets, is exhausted based upon our current financial status.
This situation requires immediate action to assure that vital state services continue and that state employees are impacted as little as possi *957 ble. Since salaries and related benefit costs are our largest expenditure item (over 70%), it is necessary to implement cost saving measures within this category. Several alternatives including immediate layoff and extensive furloughs were considered. We have determined that delaying the paydays of employees and delaying remittance of the state’s (employer’s) share of retirement contributions will have the least impact on the pay and job security of state employees and allow a more orderly plan for improving the state’s financial condition.”

. The Commission derives its authority from the state's constitution:
"Each Commission is vested with broad and general rule-making and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotions, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a uniform pay and classification plan; to require an appointing authority to institute an employee training and safety program; and generally to accomplish the objectives and purposes of the merit system of civil service as herein estab-lished_’’ La. Const, art. X, § 10(A)(1).

. The Uniform Pay Plan currently in effect for classified employees provides for a minimum and maximum salary range determined on both a monthly and an annual basis. Most employees receive bi-weekly pay checks calculated on the annual salary.

. "Payroll Periods and Timely Issuance of Paychecks Due to Classified Employees.
(a) An appointing authority,, the Commissioner of Administration on behalf of the Uniform Payroll System, or the head of any other payroll system responsible for issuing paychecks to classified employees, shall establish weekly, biweekly, semi-monthly, or monthly payroll periods. Use of any other pay cycles must be approved by the Director.
(b) Paychecks due to classified employees shall be issued no later than seven days following the end of the applicable payroll period unless approval is obtained from the Director under conditions established by him. That rule is currently in effect. Any future requests for alterations to the schedule established according to this rule must have the approval of the Director of Civil Service.”