Dear Mr. Purpera,
Your opinion request for an Attorney General's Opinion has been assigned to me for research and reply. You requested an opinion concerning La.R.S. 11:1144(B)(3) and its application to the Louisiana School Employees' Retirement System ("LSERS")[1] when the funded status of the system falls below one-hundred percent.
You provided that the actuarial valuations for LSERS from June 30, 1991 through June 30, 2001, reflected system assets exceeding the accrued liability, thus, the system was overfunded and maintained a surplus. The ratio of assets to accrued liability remained over one-hundred percent even after the accrual rate[2]
was increased in 1991, 1999, and 2001. The system was overfunded until 2002 when the funded status fell below one-hundred percent as shown in the June 30, 2002 actuarial valuation. LSERS continued to be less than one-hundred percent funded on the June 30, 2003 actuarial valuation and has continued to remain underfunded since that time. Due to the underfunded status of the system, you are requesting an opinion regarding whether La.R.S. 11:1144(B)(3) requires an increase in LSERS' employee contribution rate to cover the current unfunded accrued liability. For the reasons more fully set forth below, it is the opinion of this office that La.R.S. 11:1144(B)(3) does not require an increase in the *Page 2 
LSERS' employee contribution rate solely on the basis that the system has become underfunded for reasons unrelated to an increase in the benefit accrual rate.
In order to properly address your questions, the development and implementation of this provision should be considered. The special provisions governing LSERS are found at La.R.S. 11:1001 through 1206, which outline the operations and authority of LSERS.[3] Included in these provisions is La.R.S. 11:1144(B)(3). The language set forth in what is now Section 1144(B)(3) was first introduced in Act 345 of the 1991 Regular Legislative Session, which enacted La.R.S. 17:913(B) to read as follows:
 Minimum allowance. No service retirement allowance for a member[4] shall be less than an amount which provides a total allowance equal to two and one-half percent multiplied by the first twenty years or less of accredited service plus three percent multiplied by the total years of accredited service in excess of twenty years of accredited service multiplied by the average compensation for any three consecutive years of membership service, at the option of the member. In the event that the funded status of this system should fall below one hundred percent, the employee contribution rate shall be increased in an amount sufficient to fund the additional cost to the system of the three percent accrual rate, with the loss being amortized in accordance with the provisions of R.S. 11:102(B)(3)(d)(i).
 [emphasis added]
Act 345 increased the accrual rate (as shown above in the beginning of La.R.S. 17:913(B)) for members of LSERS from 2.5% for all years of service to 2.5% for the first twenty-five (25) years and 3.0% for all years of service over twenty-five (25) years. Act 345 also amended La.R.S. 11:62(4) by increasing the employee contribution rate for LSERS' members from 6.65% to 7%. The effect of the increased accrual rate caused *Page 3 
additional unfunded liability to the system which was offset concurrently by increasing the employee contribution rate.
In 2001, the accrual and employee contribution rates for members in LSERS were once again amended. Act 897 of the 2001 Regular Legislative Session increased the accrual rate under La.R.S. 11:1144(B)[5] from 3.0% to 3 1/3% and the employee contribution rate in La.R.S. 11:62(4) was raised from 6.35% to 7.5% to cover the unfunded actuarial liability (which included the additional cost resulting from the application of the increased benefit accrual rate).[6] The act further amended the language in La.R.S. 11:1144(B) entitled "Minimum Allowance" by reorganizing the statute and relocating the language at issue to La.R.S. 11:1144(B)(3), which then stated as follows:
 In the event that the funded status of this system should fall below one hundred percent, the employee contribution rate shall be increased in an amount sufficient to fund any cost to the system resulting from the application of the benefit accrual rates provided for in this Subsection, with the loss being amortized in accordance with the provisions of R.S. 11:102(B)(3)(d)(i).
 [emphasis added]
The most recent revisions to the language at issue in Section 1144(B)(3) was made in Act 992 of the 2010 Regular Legislative Session. As you can see below, no substantial changes were made to the language in La.R.S. 11:1144(B)(3):
 In the event that the funded status of this system should fall below one hundred percent, the employee contribution rate shall be increased in an amount sufficient to fund any cost to the system resulting from the application of the benefit accrual rates provided for in Paragraphs (1) and (2) of this Subsection, with the loss being amortized in accordance with the provisions of R.S. 11:102(B)(3)(d)(i).
 [emphasis added to indicate the added language]
In analyzing La.R.S. 11:1144(B)(3), we are mindful of the following principles of statutory construction set forth by our supreme court in City of New Orleans v. LA Assessors' Retirementand Relief Fund, 05-2548 (La.10/1/07), 986 So.2d 1, 17: *Page 4 
 Legislation is the solemn expression of the legislative will and, therefore, the interpretation of a law primarily involves the search for the legislature's intent. The starting point in ascertaining that legislative intent is the language of the statute itself. In examining that language, words and phrases are to be read in their context and to be accorded their generally prevailing meaning. LSA-C.C. art. 11; LSA-R.S. 1:3. It is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found.
 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the legislature's intent. LSA-C.C. art. 9; LSA-R.S. 1:4. When the language of a law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10. Finally, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. (Citations to case law omitted.)
Applying those principles to the LSERS statutory regime, we conclude that La.R.S. 11:62(4) establishes the employee contribution rate for LSERS and La.R.S. 11:1144(B)(3) requires an increase in the employee contribution rate only when certain events occur. La.R.S. 11:1144(B)(3) only becomes germane when an increase in LSERS' benefit accrual rate attributes or causes the system to fall below one-hundred percent and results in underfunding of the system. The plain language of the entire statute requires the following events to occur before La.R.S. 11:1144(B)(3) can be applied: (1) an increased accrual rate, (2) the funded status of LSERS falls below one-hundred percent and (3) the under funded status of the system was caused by or attributable to the additional liability of the increased accrual rate. Therefore, La.R.S. 11:1144(B)(3) cannot be used to modify the employee contribution rate for LSERS when factors other than an increased benefit accrual rate are the cause of, or result in, the underfunded status.
This analysis is exemplified in Act 897 and LSERS' actuarial valuation dated June 30, 2001.[7] As previously discussed, Act 897 of the 2001 Regular Legislative Session *Page 5 
increased the accrual rate in La.R.S. 11:1144(B)(3) from 3.0% to 3 1/3% and the employee contribution rate in La.R.S. 11:62(4) was raised from 6.35% to 7.5%. The Act went into effect at a time when the system was overfunded and carried a surplus. Section 2 of Act 897 included a provision which allowed the additional (retroactive) liability of $102,566,157 to be offset by the system's surplus.[8]
More importantly, the accrual rate increase caused additional cost to the system in the amount of $55,403,000, which was offset by the concurrently increased employee contribution rate. Even though LSERS funded status had not fallen below one-hundred percent at the time Act 897 went into effect, the actuarial valuations recommended an increase in the employee rate to offset the additional unfunded accrued liability. Accordingly, the employee rate was increased by the Legislature to an amount to cover the unfunded liability which included the additional benefit cost to the system. The unfunded liability was amortized, allowing members of LSERS to absorb the additional cost to the system of the higher benefit accrual rate by paying an increased employee contribution rate until 2029 or until the system becomes one-hundred percent funded.[9] As a result, any unfunded accrued liability due to the increased accrual rate as amended by Act 897 was offset and funded in 2001.
Essentially, La.R.S. 11:1144(B)(3) was designed to work in connection with La.R.S. 11:62(4) which sets LSERS employee contribution rate. The express language of Section 1144(B)(3) clearly shows that anytime the accrual rate is increased for LSERS, the employee contribution rate must be concurrently increased to offset any additional cost to the system incurred by the increased benefit rate, but, only if or to the extent the system is underfunded at the time of the increase. Subsequent fluctuations in the financial markets, which may contribute to the underfunded status of LSERS, do not trigger the application of La.R.S. 11:1144(B)(3). We note here that the Legislature established a framework whereby gains and losses of LSERS, amortized over a period of years, are required to be addressed by annual adjustments to the employer contribution rate for the system.[10]
It is also important to note that the Louisiana Legislature establishes all employee and employer contribution rates of the public retirement systems.[11]
La.Const. art. X, § 29(E)(2)(a) authorizes the Legislature to determine and set all required contributions to be made by members.[12] The Legislature "sets" the necessary and appropriate *Page 6 
employee and employer contribution rates for the public retirement systems based on recommendations from the Public Retirement Systems' Actuarial Committee (PRSAC).[13] As provided in La.R.S. 11:121, et seq., PRSAC serves as an advisor to the Legislature on funding issues regarding public retirement systems.[14] Primarily, PRSAC informs the Legislature of all findings and makes recommendations to attain and maintain the soundness of the public retirement systems, plans, and funds.[15]
PRSAC's main duty is to review and study actuarial assumptions, funding methods, the unfunded liability determined by those methods, the amortization methods to reduce unfunded liability, etc.[16] As a practical matter, after the actuaries for each retirement system and the Legislative Auditor submit annual actuarial valuations, PRSAC reviews the assumptions and valuations submitted and officially establishes a single valuation for each system which is then submitted to the Legislature. The Legislature reviews the recommendations by PRSAC and determines the necessary and appropriate contribution rates which may be increased or decreased depending on the systems' funding status.
Under the laws and analysis provided above, it is the continued opinion of this office that, with La.R.S. 11:62(4), the Legislature sets LSERS' employee contribution rate and La.R.S. 11:1144(B)(3) only becomes applicable when an increase in LSERS' benefit accrual rate causes underfunding of the system. Even though the system has been underfunded since 2002, it is our understanding that this underfunding was caused by investment losses resulting from the downturn in the economy and did not occur as a result of any additional costs associated with the increased benefit accrual rate.[17] This type of loss, amortized over the course of the statutorily required time period(s), is addressed by the annual adjustments to the employer contribution rates as mandated by law. For that reason, Section 1144(B)(3) is not applicable. Only when the specific events outlined in La.R.S. 11:1144(B)(3) occur would this provision require an increase in the employee contribution rate to offset the additional benefit cost to the system. *Page 7 
This opinion is not intended to limit or interfere with the independent authority of the Legislature to set the employee and employer contribution rates based on the recommendations from PRSAC. In other words, even if the events that trigger the application of La R.S. 11:1144(B)(3) are not present, the Legislature still possesses the authority to amend the employee contribution rates as it deems appropriate.
I hope the foregoing is sufficiently responsive to your concerns. If we can be of further assistance, please do not hesitate to contact our office.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY:___________________ MERIDITH J. TRAHANT Assistant Attorney General
 JDC/MJT/ard
[1] LSERS was created on July 31, 1946 and its members are comprised of non-instructional personnel of the Louisiana public school system. Membership in LSERS includes school bus drivers; janitors; custodians; maintenance employees; school bus aides, monitors, and attendants; and other regular school employees who actually work on school buses helping with the transportation of school children.
[2] The accrual rate is the rate (benefit multiplier) at which the members accumulate retirement benefits as set forth under La.R.S. 11:1144.
[3] LSERS is financed through member (La.R.S. 11:62(4)) and employer contributions (La.R.S. 11:102) and investment earnings on the contributions. Retirement disbursements are made with those funds and the interest generated on those funds.
[4] La.R.S. 11:1001(13) defines "employee" as any person legally occupying a position as a school bus driver who actually renders a service by driving a school bus during the full time of his employment, a school janitor, a school custodian, a school maintenance employee, school bus aide, monitor or attendant, or other regular school employee who actually works on a school bus helping with the transportation of school children, and who is a legal employee of a parish or city school board of the state of Louisiana, and shall include the employees of this system. A "member" is defined under La.R.S. 11:1001(17) as any school employee, as defined in Section La.R.S. 11:1001(13), as provided in Part II of this Chapter. In all cases of doubt, the board of trustees, as hereinafter defined, shall determine whether any person is eligible to be a member.
[5] Previously located at La.R.S. 17:913(B).
[6] This information was provided by the system's actuary, Mr. Charles Hall.
[7] See attached LSERS' June 30, 2001 actuarial valuation.
[8] Atty. Gen. Op. 2002-0046.
[9] See attached Actuarial Cost Note by the Legislative Actuary dated April 26, 2001.
[10] See La.R.S. 11:102(B).
[11] La.R.S. 11:61, 62 and 102.
[12] In the late 1980's, the state experienced a cash flow crisis.Louisiana Municipal Association v. State, 04-0227 (La.1/19/05),893 So.2d 809, 818, citing Strickland v. State, Office ofGovernor, 534 So.2d 956 (La. 1988). In order to ensure the financial soundness of both state and statewide public retirement systems affected by the crisis, the legislature proposed amending the state constitution. Id. Pursuant to 1987 Acts. No. 947, § 2, the proposal to add paragraph E to La.Const. art. X, § 29 was submitted to the voters and ratified on November 21, 1987. Id. The amendment became effective on December 24, 1987. Id. As enacted, La.Const. art. X, § 29(E) requires that state and statewide retirement systems attain and maintain actuarial soundness and that the legislature establish the particular method of actuarial valuation to be employed for purposes of accomplishing this end.City of New Orleans v. Louisiana Assessors' Retirement and ReliefFund, 2005-2548 (La. 10/1/07), 986 So.2d 1, 9.
[13] The employer contribution rate as referred to in this Subpart shall be determined by the PRSAC. La.R.S. 11:104; The Legislature shall set the required employer contribution rate equal to the actuarially required employer contribution. La.R.S. 11:102(B)(1).
[14] La.R.S. 11:121(B).
[15] La.R.S. 11:121(B).
[16] La.R.S. 11:127.
[17] See attached LSERS' June 30, 2002 actuarial valuation which shows an increased investment loss of $168,760,687 from the previous year.